# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TREGG VANZANDT, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   CIV-No. 08-99-FHS |
| RAY PEDEN and KAREN PEDEN, | ) ) ) |
|     Defendants. | ) |

## ORDER

Sabrae VanZandt ("Sabrae") is the minor daughter of Misty L. VanZandt ("Misty") and Plaintiff, Tregg VanZandt. On October 21, 2002, Misty and Plaintiff divorced and Plaintiff was granted visitation rights to Sabrae pursuant to a Decree of Divorce entered in the District Court of Sequoyah County, Oklahoma. Plaintiff was never able to exercise his visitation rights, however, because Misty immediately removed Sabrae from Oklahoma. Mother and daughter eventually relocated to Gladewater, Texas, where they resided for a period of time with Defendants, Ray and Karen Peden. Misty was arrested by Texas law enforcement officials in October 2004 and she was returned to Oklahoma. Misty refused to disclose the location of Sabrae. She was held in the Sequoyah County jail on contempt charges for over one year while she persisted in her refusal to reveal the location of Sabrae. In December 2005, Sabrae was located in the home of John and Karla Gray in Kyle, Texas, and she was returned to Oklahoma in the custody of the Oklahoma Department of Human Services

("DHS"). In March of 2006, Plaintiff saw Sabrae for the first time since his divorce on October 21, 2002.

On December 7, 2007, Plaintiff instituted this action by filing a Petition in the District Court of Sequoyah County, Oklahoma, against Defendants for having "knowingly aided and assisted Misty L. VanZandt in hiding Sabrae with the intent to deny Plaintiff his right of visitation under an existing court order." Petition at ¶16.[1] On March 10, 2008, Defendants removed the case to this Court on the basis of diversity jurisdiction. Defendants have moved to dismiss this action pursuant to Rule 12(b)(2) and (6) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted (Docket No. 6). Having thoroughly reviewed the respective submissions of the parties, the Court finds dismissal to be appropriate as personal jurisdiction is lacking over Defendants.

In support of their motion to dismiss for lack of personal jurisdiction, Defendants, who are Texas residents, contend Plaintiff has failed to sustain his burden of showing the requisite minimum contacts between them and Oklahoma in order to permit the exercise of personal jurisdiction over them as nonresident defendants. Defendants argue that the allegations in

---

[1] Plaintiff's claim is based on Okla.Stat.tit. 43, §111.2, which provides for the recovery of damages and attorney fees against "[a]ny person who is not a party to a child custody proceeding, and who intentionally removes, causes the removal of, assists in the removal of, or detains any child under eighteen (18) years of age with intent to deny another person's right to custody of the child or visitation under an existing court order . . . ."

the Petition, as well as those raised in response to the motion to dismiss, fail to establish sufficient contacts by them with the State of Oklahoma.  They claim that their involvement in connection with the allegations of the Petition consisted solely of activities occurring in the State of Texas.  Under these circumstances, they claim this Oklahoma court lacks personal jurisdiction over them.

Personal jurisdiction over a defendant may be exercised only if a court is satisfied that the requirements of due process have been met.  International Shoe v. Washington, 326 U.S. 310 (1945). In this regard, Plaintiff bears the burden of establishing such jurisdiction as to both Defendants.  Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984), cert. denied, 471 U.S. 1010 (1985); Rush v. Savchuk, 444 U.S. 320, 334 (1980); Jones v. 3M Co., 107 F.R.D. 202, 204 (D. N.M. 1984).  In order to defeat a Rule 12(b)(2) motion to dismiss under circumstances where the court does not conduct an evidentiary hearing, Plaintiff "need only make a prima facie showing of personal jurisdiction."  OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998).

In a diversity action, the law of the forum determines the existence of personal jurisdiction over a defendant.  Yarbrough v. Elmer Bunker & Assocs., 669 F.2d 614, 616 (10th Cir. 1982). Under Oklahoma law a single due process analysis is utilized to determine the extent of personal jurisdiction over a nonresident defendant.  Oklahoma's long-arm statute provides that "[a] court of this state may exercise jurisdiction on any basis consistent

with the Constitution of this state and the Constitution of the United States." Okla. Stat. Ann. tit. 12, § 2004F. The general test for determining whether a state may exercise personal jurisdiction under the federal Constitution is well-established:

> A federal court sitting in diversity 'may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state.' World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). 'The defendant's contacts with the forum State must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'"' World-Wide Volkswagen, supra, 444 U.S. at 292 (quoting International Shoe, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940))). The sufficiency of a defendant's conduct must be evaluated by examining the defendant's conduct and connections with the forum state to assess whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State. Hanson v. Denckla, 357 U.S. 235, 253 (1958)."

Rambo v. American Southern Ins. Co, 839 F.2d, 1415, 1417 (10th Cir. 1988)(quoting First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127, 1130-31 (10th Cir. 1987)). The nature of a defendant's contacts must be such that the defendant could reasonably anticipate being haled into court in the forum state. World-Wide Volkswagen, 444 U.S. at 297.

Two types of personal jurisdiction are recognized – specific and general. Specific jurisdiction involves a two-step analysis. First, it must be determined whether a defendant "has 'purposefully directed' his activities at residents of the forum,

and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)(internal quotations omitted); Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1071 (in tort cases, courts "often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state"). If sufficient minimum contacts are present, the second step requires a showing that the exercise of personal jurisdiction over a defendant comports with traditional notions of "fair play and substantial justice." Id. at 476. General jurisdiction, on the other hand, requires continuous and systematic contacts with the forum. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984). The minimum contacts analysis for general jurisdiction is more stringent than for specific jurisdiction as the contacts do not derive from the events giving rise to the suit. See Benton v. Cameco Corp., 375 F.3d 1070, 1080 (10th Cir. 2004), cert. denied, 544 U.S. 974 (2005). As Plaintiff does not argue in his response brief for the existence of general jurisdiction, the Court will limit its discussion to specific jurisdiction.

The allegations of the Petition and the additional arguments asserted in the Plaintiff's response brief fail to establish the necessary connections with the State of Oklahoma by Defendants in order to allow for the exercise of specific personal jurisdiction. Plaintiff's claim is based on Defendants' alleged aid and assistance given to Misty in hiding Sabrae with the intent to deprive Plaintiff of his visitation rights under the Oklahoma divorce decree. Petition, at ¶16. It is undisputed,

however, that Defendants resided in Texas and that any "aid and assistance" given to Misty in hiding Sabrae took place in Texas. In the Petition, Defendants are alleged to have provided a home for Misty and Sabrae on Defendants' property in Texas. Petition, at ¶12. It is also alleged that Defendants anticipated Sabrae might be found on their property and they arranged for the placement of Sabrae with John and Karla Gray in Kyle, Texas. Id. at ¶13. In sum, each and every allegation against Defendants with respect to their "aid and assistance" in hiding Sabrae involves conduct in the State of Texas. There are simply no allegations that Defendants performed any act in the State of Oklahoma, or communicated in Oklahoma with any authorities, sufficient to empower this court with personal jurisdiction over Defendants.

Plaintiff asserts, however, that the requisite minimum contacts have been established because "Defendants have submitted themselves to the jurisdiction of the State of Oklahoma by hiring attorneys to appear on behalf of Misty VanZandt in opposition of Plaintiff's efforts to find his daughter and to receive his court ordered visitation." Petition, at ¶ 2. Even assuming that hiring counsel to defend Misty on the Oklahoma criminal charges implicates Defendants in the underlying claim of hiding Sabrae with the intent to deprive Plaintiff of his visitation rights under the Oklahoma divorce decree, this Court concludes such activity is insufficient to establish that Defendants purposefully directed their activities at Oklahoma so as to require them to defend in Oklahoma. See Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir. 1995)(retention of legal

counsel does not establish minimum contacts with legal counsel's home forum). Plaintiff also contends Defendants have subjected themselves to the jurisdiction of Oklahoma courts through their participation in a website, www.mistyvanzandt.com, designed to bring awareness of Misty's legal battles to the public and to solicit information from users and assistance from Oklahoma officials.[2] The Court disagrees and finds the existence of this passive informational website does not create personal jurisdiction over Defendants. See Soma Medical Intl. v. Standard Chartered Bank, 196 F.3d 1292, 1296-97 (10th Cir. 1999).

Finally, Plaintiff contends the "purposeful direction" component of the due process analysis has been satisfied by application of an "effects test" under Calder v. Jones, 465 U.S. 783 (1984). Plaintiff contends that under Calder, jurisdiction over Defendants would be appropriate because Defendants knew, or should have known, that their actions with respect to Sabrae would have a direct impact or cause injury to Plaintiff in Oklahoma. Calder involved a suit brought in California by the well-known actress, Shirley Jones, against, among others, the writer and editor of an allegedly libelous article published by in the *National Enquirer* and distributed nationally. The writer and editor were Florida residents and the article was written and edited in Florida. The writer and editor contested jurisdiction in the California court by arguing that the article was written and edited in Florida and they had few contacts with California.

---

[2] The website's headline is "Why is Misty Vanzandt in jail?" Under that headline is a request for anyone with tips to "contact Ray Peden at the e-mail or phone number below." Exhibit "C" to Plaintiff's Response to Motion to Dismiss, p. 06120.

Id. at 785-86, 789. The Supreme Court rejected this argument and found specific jurisdiction in California to be appropriate as defendants had not engaged in "mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions, were expressly aimed at California." Id. at 789. The Supreme Court further held that the writer and editor "*knew* [the article] would have a potentially devastating impact upon respondent. And they *knew* that the brunt of that injury would be felt by respondent in the State in which she lives and works [California]. . . ." Id. at 789-90 (emphases added).

The Tenth Circuit has recognized Calder as a means for satisfying the "purposeful direction" inquiry and concluded three elements must be present: "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state . . . ." Dudnikov, 514 F.3d 1063, 1071-72. The Court concludes that no footing for specific personal jurisdiction is established by Plaintiff's reference to Calder's "effects test." Even assuming satisfaction of the first and third elements by virtue of Defendants' intentional actions in hiding Sabrae from Plaintiff, an Oklahoma resident, the Court concludes the record is lacking as to proof that Defendants' conduct was expressly aimed at Oklahoma. The "express aiming" element of Calder focuses on the Defendants' intentions and requires proof that Oklahoma was the "focal point" of their allegedly tortious conduct. Dudnikov, 514 F.3d at 1074-75. Here, nothing in the documents attached to Plaintiff's response brief, i.e., Misty's deposition testimony, the DHS interview of Ray Peden, or the

website publication, indicate any intent or knowledge on the part of Defendants that their allegedly tortious actions were undertaken with Oklahoma as the focal point. Rather, the record, at most, suggests Defendants were assisting Misty in hiding Sabrae in Texas from Plaintiff, whom Misty described as a molester. Exhibit "A" to Plaintiff's Response Brief to Motion to Dismiss, Deposition Testimony of Misty, p. 49, lines 13-17 ("I know I told them [Defendants] that I was having problems with my daughter because her father molested her, and I was trying to fight in court to get normal supervised visitation and I was needing some help."). Nothing in any of these documents suggests knowledge on the part of Defendants that they intended, by their efforts, to affect or interfere with any Oklahoma court proceeding or that they were aiming their efforts at Oklahoma. To the contrary, the record suggests that Defendants' efforts were directed toward assisting Misty in hiding Sabrae in Texas - without any direct knowledge of Oklahoma proceedings governing the parents' rights and obligations with respect to Sabrae. Thus, we are left with the mere allegation that Defendants' intentional acts were aimed at Oklahoma. Without an evidentiary foundation to support this claim, the Court must conclude the exercise of personal jurisdiction over Defendants is inappropriate. See Far West Capital, 46 F.3d at 1079 (the mere allegation that a nonresident defendant has committed a tortious act allegedly injuring a forum resident does not necessarily establish that the nonresident defendant has sufficient contacts with the forum state for the exercise of personal jurisdiction).[3]

---

[3] In addition to the issues of minimum contacts and purposeful availment, the Court's exercise of jurisdiction must be

Based on the foregoing reasons, Defendants' Motion to Dismiss for lack of personal jurisdiction is granted.

It is so ordered this 21st day of April, 2008.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma

---

reasonable. <u>Rambo</u>, 839 F.2d at 1419 n.6. As the first step of the two-step analysis is lacking, there is no need for the Court to address the reasonableness issue.